**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. No. 06-108S** |
| | ) | |
| **JOSEPH ANTONE, JR.** | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Comes now the United States of America, by and through its attorneys, Robert C. Corrente, United States Attorney, and Sandra R. Beckner, Assistant United States Attorney, and responds to the Defendant's Motion to Suppress as follows:

The defendant claims that his confession and the evidence seized should be suppressed because they are the "fruit" of an illegal search. His claim is without merit.

**FACTS**

On August 31, 2006, Detective William Swierk and Detective Kelly Mitchell of the Middletown Police Department were investigating a sexual assault. Based upon information received during the investigation, the detectives had been looking for the defendant, Joseph Antone. They learned that the defendant lived with his ex-wife at 72D Marcus Wheatland Avenue in Newport, Rhode Island.

At approximately 5:30 a.m., noticing a light and the television on at 72D, Detectives Swierk and Mitchell knocked on the door. The defendant answered the door fully dressed. The

detectives identified themselves and began to speak with the defendant. They asked him where he had been that evening and whether or not he had rented a room at a motel in Middletown. The defendant told the detectives that he had, and they informed him that the female staying in that room was now in the hospital.

Detective Swierk then asked the defendant if he would accompany them to the station. The defendant agreed. He then opened the door further and said, "Come on. I got to get my shoes." The defendant turned around and began to walk towards the kitchen of the residence. Detective Swierk followed him. Detective Mitchell followed Detective Swierk into the apartment and remained standing in the living room, the room into which the front door opened.

Detective Swierk continued to follow the defendant, who said he had a pizza in the microwave. After he removed the pizza, the defendant and Detective Swierk walked back into the living room.

Detective Mitchell then pointed to the coffee table where there was a bag of cocaine. Detective Swierk asked the defendant whose drugs were on the table, and the defendant admitted that the cocaine was his. Detective Mitchell then noticed another bag of cocaine, in an open tin near a flat screen television. At this point, the detectives notified Newport Police Department and detained the defendant until they arrived.

Once Newport Police officers arrived, the defendant was

transported back to the police station. He was read his Miranda rights, and was interviewed. The defendant denied admitting the detectives into the apartment, but confessed to possessing the drugs. He also signed a consent to search form for 72D. Newport Detectives Rego and Matoes nonetheless obtained a warrant to search 72D.

During the search of the apartment, officers seized nearly 200 grams of crack cocaine, drug ledgers, drug paraphernalia, video surveillance devices, a police scanner and a radio frequency detector. They also seized $3,809 from the defendant. The defendant was interviewed a second time and admitted to distributing and using crack cocaine. The defendant now moves to suppress his statements and the evidence seized.

## ARGUMENT

Defendant makes two arguments in support of his motion to suppress. As an initial matter, he maintains he never consented to the officers' entry into his apartment, and in the alternative, he claims his consent was involuntary.[1] The government will address each assertion in turn.

### I. THE DEFENDANT CONSENTED TO THE ENTRY OF DETECTIVES SWIERK AND MITCHELL INTO HIS APARTMENT.

To establish an exception to the warrant requirement, "'the

[1] The defendant also raises the issue of standing. The government does not dispute that he has standing to contest the search.

government must prove valid consent by a preponderance of the evidence.'"[2] See United States v. Winston, 444 F.3d 115, 121 (1st Cir. 2006) (quoting United States v. Forbes, 181 F.3d 1, 5 (1st Cir. 1999)). "[C]onsent may be express or inferred from conduct." Winston, 444 F.3d at 121.

In Winston, the First Circuit concluded the defendant voluntarily consented to a search of his night stand because he told officers his wallet was in the bedroom night stand when asked for identification, and then when the agents asked where the identification was, he shrugged his shoulder towards the night stand. See id. Although the defendant never expressly consented to a search of the night stand, the First Circuit nonetheless determined that the defendant's actions constituted "implied-in-fact consent," and reversed the district court's

---

[2] As a preliminary matter, the defendant argues that Rhode Island law should govern the standards applicable in federal court; however, it is well-established that "federal law governs federal prosecutions in federal court." United States v. Sutherland, 929 F.2d 765, 769 (1st Cir. 1991). The test of admissibility of evidence under the Fourth Amendment "is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." Elkins v. United States, 364 U.S. 206, 224 (1960). Moreover, an exception to this general rule, which would arguably preclude federal officials from capitalizing on a violation of state law, does not exist in this Circuit. See Sutherland, 929 F.2d at 771 ("We write here to clarify that, in this circuit, there is no such exception."). Furthermore, even if such an exception as explained yet rejected in Sutherland, 929 F.2d 770, were respected in the First Circuit, it would be inapplicable in a case such as this that raises issues under the Fourth Amendment to the United States Constitution, as opposed to an issue under Rhode Island law.

holding to the contrary. Id. at 122.

In a case directly on point, Robbins v. Mackenzie, 364 F.2d 45, 48 (1st Cir. 1966), the First Circuit considered facts virtually identical to the facts in this case, and concluded the defendant's actions constituted consent to enter the apartment. In Robbins, an officer seeking to interview the defendant knocked on his door, identified himself and stated the reason for his visit. Id. The defendant opened the door, then turned his back and walked back into the room. Id. The Court determined that the defendant's "walking back into the room [was] an implied invitation to conduct the talking inside," and reversed the district court's finding of involuntariness. Id. at 48-50.

Likewise, in this case, when the defendant answered the officers' knock, they identified themselves and spoke to the defendant regarding his whereabouts and the female victim. The then defendant agreed to accompany the officers to the station for an interview. In light of these facts, it is no surprise the officers interpreted his statement, "Come on. I got to get my shoes," as consent to enter the apartment, especially when the defendant made the statement in conjunction with opening the door wider. See Robbins, 364 F.2d at 49 ("An ordinary person who knocks on a door and receives assent may properly consider himself an invited guest. . . . Similarly, the fourth amendment . . . does not require [a police officer] to be clairvoyant.").

Furthermore, this is not a case where the officers informed the defendant that they were entering or going to search. Instead, the defendant invited them into his apartment. That is, the defendant initiated the officers' entry into the apartment - the officers did not use their authority to gain entry or acquiescence from the defendant. Cf. United States v. Weidul, 325 F.3d 50, 54 (1st Cir. 2003) (officer's statements, "I'm going to search in here," after entering the house without permission, deemed a "claim of lawful authority to search" negating any argument that individual consented despite her statement of "okay").

Defendant's affirmative actions and statements in this case more clearly demonstrate consent than even those of the defendants in Winston or Robbins. See also United States v. Carter, 378 F.3d 584, 587 (6th Cir. 2004) (defendant consented when he stepped back in response to a request to enter); (United States v. Ramirez-Chilel, 289 F.3d 744, 751 (11th Cir. 2002) (defendant's "yield[ing] the right-of-way" at the door absent a demonstration of authority by officers constituted implied-in-fact consent); United States v. Pena-Sarabia, 297 F.3d 983, 986-87 (10th Cir. 2002) (defendant's statement of "come on in" in response to a request for entry was deemed consent to enter, and defendant's response of "go ahead" in response to a request to search was deemed consent to search).

## II. DEFENDANT VOLUNTARILY CONSENTED TO THE AGENTS ENTRY INTO HIS APARTMENT, AND THE AGENTS OBSERVED DRUGS LYING IN PLAIN VIEW

"In order to be effective, a person's consent . . . must be freely and voluntarily given." United States v. Coraine, 198 F.3d 306, 309 (1st Cir. 1999). "Voluntariness turns on a number of factors, including the person's 'age, education, experience, intelligence, and knowledge of the right to withhold consent.'" Id. (quoting United States v. Barnett, 989 F.2d 546, 555 (1st Cir. 1993)); see United States v. Jackson, 918 F.2d 236, 242 (1st Cir. 1990) (experience with law enforcement is a factor to consider in evaluating voluntariness[3]).

In Winston, 444 F.3d at 122, the First Circuit found that the defendant's implied-in-fact consent was voluntary despite the fact that defendant was the subject of an in-house arrest, was handcuffed, and agents had their weapons drawn. The Court reached this conclusion because the agent's request for identification was "eminently reasonable," there was no evidence of coercive methods and defendant's immediate response to agents demonstrates that he was not coerced.

Unlike Winston, the case at hand does not involve a demonstration of force by the officers. In this case, defendant was not arrested at the time he invited the officers into the apartment; he was not handcuffed; weapons were not drawn; he was

[3] Jackson dealt with the voluntariness of a defendant's waiver of his Miranda rights.

not surrounded; he was not under arrest; and, he agreed to accompany the agents to the station.

Moreover, the agents had no interest in the defendant's apartment, making it unlikely that they would use coercive methods to gain entry. Instead, the agents were investigating the defendant's role in a sexual assault that occurred in a hotel in another town.

Undoubtably the defendant will point to his statement to Detective Mark Matoes at the Newport police station as evidence that he did not consent to the detectives' entry into the apartment. It should be noted the defendant was never directly asked what was said at the door, but instead asked whether he "let" the detectives in the apartment or gave them permission to enter. Both of which the defendant denied doing.

That being said, if the defendant disputes the government's version of the facts, the defendant's subsequent denial of consent can be explained in light of the defendant's considerable experience with law enforcement. Defendant, who has been convicted of robbery, assault with a dangerous weapon, conspiracy, a weapons charge, possession of a controlled substance, obstructing a police officer and three drug trafficking convictions, is a veteran. By the time of the interview, the defendant surely realized that he was under arrest, yet again, this time for cocaine the officers saw

courtesy of his invitation. It only makes sense that he would deny allowing the officers into his apartment at that point.

As a final point, once lawfully inside the apartment, Detective Mitchell saw the cocaine lying in plain view, see United States v. Garner, 338 F.3d 78, 80 (1st Cir. 2003), and this information was later used in part to obtain a search warrant of defendant's apartment[4].

[4] In addition to the search warrant obtained by Newport detectives, Detective Mark Matoes with Newport Police Department obtained written consent to search from the defendant during his recorded interview of the defendant at the police station. The defendant gave Detective Matoes written consent to search after having his Miranda rights read to him.

## CONCLUSION

For all the foregoing reasons, the Court should find that the defendant consented to the officers' entry into the apartment, that his consent was voluntary and that the cocaine was discovered in plain view.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on November 16, 2006, I e-filed the Government's Response in Opposition to Defendant's Motion to Suppress Evidence and Statements, and it is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Joseph J. Voccola
454 Broadway
Providence, RI 02903
Phone (401) 751-3900
Fax (401) 751-8983
sue@joevoccolalawoffices.com

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj