IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | CR06-108S |
| | ) | |
| | ) | |
| JOSEPH ANTONE, JR. | ) | |

**DEFENDANT'S POST-HEARING MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPRESS ORAL AND TANGIBLE EVIDENCE**

Respectfully submitted,
Joseph Antone, Jr.
By his attorneys,

Joseph J Voccola, Esq. #4132
454 Broadway
Providence RI 02903
Phone (401) 751-3900
Fax (401) 751-8983

`

John F. Lusi, Esq. #4949
29 Okie Street
Providence RI 02908
Phone (401) 632-0161
Fax (401) 632-0589
jlusi@cox.net

Dated: February 16, 2007

## I. INTRODUCTION

On January 22 and 25 of this year this court, upon defendant's request, conducted an evidentiary hearing on defendant's previously filed and pending motion to suppress. Six witnesses testified at this hearing. The government, bearing the burden of proof on defendant's motion, first called three witnesses[1] and the defendant, following the government's presentation of evidence, called three witnesses.[2] Following the testimony of the six witnesses and the introduction of exhibits the court asked the parties to file post-hearing memoranda of law and directed the parties to address specific legal issues.

This memorandum attempts to comply with the court's request and supplements the analysis which appears in defendant's pre-hearing memorandum. The relevant facts will be weaved into the analysis as necessary.

## II. ISSUES

The two main issues requiring resolution by this court are: first, did the defendant, Mr. Antone, voluntarily give consent to the two Middletown Police Detectives who knocked on his door in the early morning of August 31, 2006 to enter his apartment?; and second, assuming consent was not

[1] Middletown Detectives William Swierk and Kelly Mitchell; and Newport Detective Mark Matoes.
[2] Newport Detective Michael Rego, neighbor Janie Baker, and defendant Joseph Antone, Jr.

voluntarily given, did the subsequent actions of members of the Newport Police Departments act to cure any taint regarding the lack of voluntary consent given to enter Mr. Antone's apartment? Mr. Antone argues that based on the testimony elicited at the evidentiary hearing, the answer to the first question regarding consent must be that no consent to enter Mr. Antone's apartment was voluntarily given. Regarding the second issue about the removal of any taint, Mr. Antone argues that nothing the police did subsequent to the unlawful entry served to remove this taint.

**A. Voluntariness of Consent**

The following seven factors militate against the notion that Mr. Antone voluntarily gave two Middletown police detectives consent to enter his apartment.

**1. Early Hour Visit without Exigent Circumstances**

First, we know that according to Detective Swierk's testimony that the encounter at Mr. Antone's front door occurred between 5:00am and 5:30am (Transcript Vol. 1 p. 6). The court will observe that at this early hour most persons are sleeping and not prepared to conduct an intelligent interview with police detectives. Of course, the police also know this. Mr. Antone testified that he was sleeping when he heard a knock at the door. (Transcript

Vol. 2 p. 70). Furthermore, we know that no exigent circumstances applied such that a visit at this early hour would appear reasonable and justified. We know that no exigent circumstances applied because Detective Swierk testified that he and detective Mitchell had visited Mr. Antone's apartment approximately two hours earlier and no one answered the door (Transcript Vol. 1 p. 32). Accordingly, given that there was no reason to knock on Mr. Antone's door at this early hour, as opposed to a reasonable hour like 8am or later, when most persons are up and about, one is left to conclude that this early visit constituted a subtle, yet clear, form of coercion.

**2. Gun Visible to Mr. Antone**

Second, another coercive aspect of this early morning visit was that although the police officers, as detectives, were not in uniform[3], they were both carrying guns. Mr. Antone testified that he observed a gun on Detetive Swierk but not on Detective Mitchell. Again, the presence of guns, while not unusual among police officers, represents a subtle yet clear reminder that this was no ordinary conversation. It would not be

[3] Defendant mistakenly stated on page two of his pre-hearing memorandum that the officers were in uniform.

unreasonable for Mr. Antone to feel some coercion from the visible presence of a gun.

**3. Mr. Antone has trouble speaking clearly.**

The third factor militating against a factual finding of voluntary consent pertains to the nature of Mr. Antone's speech. The court heard Mr. Antone tesify. At one point at the beginning of Mr. Antone's testimony the court stated: "I'm having a hard time understanding. I think that microphone is a little too close to your mouth. So just back up a little bit, and I want you to slow down with your speech. Okay?" (Transcript Vol. 2 p. 71.)

The court also heard a taped recording of an interview between Newport detective Mark Matoes and Mr. Antone conducted merely a few hours after the entry into Mr. Antone's apartment. A transcript of this interview contains numerous points at which Mr. Antone's speech was inaudible.

The government also noticed Mr. Antone's often unintelligible speech. On cross examination, the government asked "Q. Sir, I notice you have a little trouble speaking. Are you missing any of your teeth? A. Yes, I am. Q. How many teeth are you missing? A. All of them. (Transcript Vol. 2 p. 79.)

Given that the crucial factual issue pertaining to a finding regarding voluntariness may revolve around one word

– “*Hold* on” versus “*Come* on” – the likelihood that the police misunderstood Mr. Antone based on his often unintelligible speech cannot be ignored.

**4. Mr. Antone and one of his neighbors testified that he told the police detectives to “Hold on”**

The fourth factor regarding a lack of voluntariness pertains to Mr. Antone’s direct testimony that he told the police detectives to “Hold on.” After agreeing to go to the Middletown police station Mr. Antone stated “I told them yes, I would come with them. I said could they hold on while I grab my keys.” (Transcript Vol. 2 p. 72) The testimony of Janie Baker corroborates this account. Ms Baker testified that she heard through an open window in her apartment Mr. Antone say “Hold on. Let me get my keys.” (Transcript Vol. 2 p. 56) The government did little to impeach the credibility of Ms. Baker.

**5. Mr. Antone’s experience and the circumstances belie any giving of voluntary consent.**

In the government’s cross examination of Mr. Antone, Mr. Antone frankly and without hesitation admitted his numerous past contact with police departments. It should be noted that these contacts related primarily to drug charges and not to offenses that would go to Mr. Antone’s veracity. Why would someone with the experience of Mr. Antone voluntarily consent to police detectives entering

his apartment knowing that there were drugs in plain view? Although this aspect of the analysis is not determinative of the issue of voluntariness, *see* U.S. v. Mendenhall, 446 U.S. 544 (1980), it is highly relevant and in Mr. Antone's favor.

Furthermore, why would someone who has just agreed to accompany police detectives to the police station then invite them into his apartment where drugs were in plain view? This sequence is not only a non sequitur but may imply that the detectives were using this encounter as a pretext to search Mr. Antone's apartment without a warrant or any other lawful basis.

**6. Police did not advise Mr. Antone that he had the right to refuse consent.**

We know that Detective Swierk, while at Mr. Antone's door, did not advise Mr. Antone that he had the right not to talk to them. (Transcript Vol. 1 p. 43) Although not determinative of the issue of voluntariness, this factor again redounds clearly to the benefit of Mr. Antone. *See* Schneckloth at 248-49.

**7. Acquiescence is not Consent**

Acquiescence to a claim of lawful authority is not valid consent. Bumper v. State of North Carolina, 391 U.S. 543 (1968). When the court asked Mr. Antone "But if you had

told them to hold and he kept coming, why didn't you stop and say 'Wait a second, I said hold on?" Mr. Antone stated "The second time I said it he kept coming. They're the police. What can I say to him. … I could have told him ten times to stop. He wasn't going to stop." (Transcript Vol. 2 p. 87) This testimony lays out a classic case of acquiescence, not voluntary consent.

The preceding seven factors lend credence to the court's suggestion that what may have occurred here was a miscommunication. (Transcript Vol. 2 p. 96) A miscommunication cannot result in consent voluntarily given and the next issue becomes: "Did the subsequent actions of members of both the Middletown and Newport Police Departments act to cure any taint regarding the lack of voluntary consent given to enter Mr. Antone's apartment? In other words, did the police effectively remove any taint regarding the unlawful entry into Mr. Antone's apartment?

**B. Taint Removers**

The government may argue that any taint regarding Mr. Antone's consent to enter his apartment was removed or cured by the subsequent actions taken by the Newport police department. The government will argue the doctrine of inevitable discovery as an exception to the exclusionary rule. On the contrary, Mr. Antone argues that all of the

subsequent actions were “fruits of the poisonous tree and must be excluded as such.

The government will argue that obtaining a search warrant and Mr. Antone’s written consent[4] to search his apartment cured any taint. This cannot be so.

The main reason this cannot be so relates to the limited time period within which the events of August 31, 2006 occurred. No one can dispute that the events beginning around 5:00am where police, without consent or other authorization, entered Mr. Antone’s apartment led continuously and without interruption to the issuance of a search warrant by a state judge before noon the same day. Newport Detective Rego testified that the search warrant issued around 11:30am (Transcript Vol. 2 p. 33)

Detective Rego issued an affidavit in support of a search warrant of Mr. Antone’s apartment. This affidavit contained tainted information gathered as a result of the unauthorized entry into Mr. Antone’s apartment as well as pre-existing information relating to events which had occurred prior to this entry. This pre-existing information related to reports by an unidentified complainant of drug dealing out of Mr. Antone’s apartment. When this happens,

---

[4] In his testimony Mr. Antone could not recall signing a consent to search his apartment but previously had admitted to Newport Detective Mark Matoes during a taped interview that he had in fact signed such a form. Accordingly, Mr. Antone’s position here is that even if he had signed a consent to search form this would not remove the taint of the unlawful entry into his apartment.

the validity of the warrant and subsequent search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. Wong Sun v. United States, 371 U.S. 471 (1963). This test, however, must be further refined. Where the decision to seek a warrant is prompted, as here, on the tainted information, the evidence must be held inadmissible. Murray v. United States, 487 U.S. 533 (1988)(holding bales of marijuana obtained pursuant to a search warrant issued following a warrantless entry into a warehouse would be admissible in evidence if “the search pursuant to warrant was in fact a genuinely independent source”).

If the Newport police department had probable cause to search Mr. Antone’s apartment on the basis of information that was independent of what was found as a result of the unauthorized search, the Newport Police Department had an obligation to present that information to a neutral a detached magistrate in seeking the issuance of a search warrant. The argument that the redacted affidavit in this case provides probable cause and therefore the evidence is admissible under the inevitable discovery rule amounts to the argument that if the police hadn’t done it wrong they would have done it right. This reasoning cannot be squared with the purposes of the Fourth Amendment and the

exclusionary rule. As an analogy, consider a situation in which a person is arrested for jumping over a turnstile before attempting to board a subway. Would law enforcement authorities allow the arrestee to go free upon the showing that he/she had a token in his/her pocket and was now willing to place this token into the turnstile? Of course not. If law enforcement authorities think they have probable cause to seek a search warrant they must seek it and let a judge decide and not take the short cut of intruding into one's apartment with the ability to rely upon suspected yet unconfirmed probable cause. This sort of confirmatory search strikes at the heart of Fourth Amendment protections and should be wholly rejected.

## III. General Principles

In addition to the two main issues analyzed above, it may be helpful to the court to consider some general principles.

First, we know that the ruling on this motion requires balancing the interest in convicting guilty defendants against the interest of keeping police conduct within constitutional parameters. The exclusionary rule is based on the judgment that "the importance of deterring police conduct that may invade the constitutional rights of

individuals throughout the community outweighs the importance of securing the conviction of the specific defendant on trial." U.S. v. Caceres, 440 U.S. 741, 754 (1979). Along these lines, one commentator has characterized the balance required by the exclusionary rule and the inevitable discovery exception to this rule as "denying to the government the use of evidence 'come at by the exploitation of…illegality' and at the same time minimizes the opportunity for the defendant to receive an undeserved and socially undesirable bonanza." Maguire, How to Unpoison the Fruit – The Fourth Amendment and the Exclusionary Rule, 55 J.Crim.L.C. & P.S., 307,317 (1964)

It should interest the court that here, even if the court grants this motion to suppress, Mr. Antone will receive no such "undeserved and socially undesirable bonanza." Before the United States indicted Mr. Antone on this one-count charge, his counsel had nearly completed negotiations with the State of Rhode Island whereby Mr. Antone would serve a five year prison sentence on the basis of a violation of probation as well as the underlying charge. Once the federal government interceded, all negotiations between Mr. Antone and the State of Rhode Island became moot, albeit perhaps temporarily given this motion. It is important to note that a violation of probation need only be proved by

the State of Rhode Island under a standard of "reasonable satisfaction" and is not subject to the exclusionary rule. See State v. Znosko, 755 A.2d 832, 834 (R.I. 2000) (per curiam). Accordingly, even if the court grants this motion to suppress Mr. Antone will not receive an undeserved bonanza.[5]

Also, along the lines of this balance the court must strike, it is worth noting that Mr. Antone's position does not attempt to place an unreasonable burden on law enforcement authorities. In this case, a simple clarification of Mr. Antone's intent at his doorway may have avoided the arguments made here on Mr. Antone's behalf. This sort of clarification regarding consent would have taken only a few seconds and cannot fairly be characterized as imposing an unreasonable burden on law enforcement authorities, especially in the context of entering one's home.

Another general principle worth considering is that law enforcement officials are trained and expected to respect scrupulously the constitutional rights of all persons. The Middletown Police Department "expects officers to observe constitutional safeguards **scrupulously** and knowledgeably.

[5] Prior negotiations with the State of Rhode Island were never consummated and would not bind either party but would serve a guide to a future resolution.

The department further expects that officers understand the limits and prerogatives of their authority to act. Respect for the civil liberties of citizens shall be the **paramount** concern on all enforcement matter. Middletown Police Department General Order 100.01 Limits of Authority page 1. (emphasis added)

Lastly, and perhaps the most important, factual aspect of this motion pertains to the nature of the place visited by the two Middletown police detectives, namely Mr. Antone’s home. The text of the Fourth Amendment reads:

> The right of the people to be secure in their persons, **houses**, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. (emphasis added)

In 1791, the drafters of this amendment used fifty-four words to articulate the protections of people against unreasonable governmental searches and seizures. It is not by accident that the word “houses” appears as one of these fifty-four words. The drafters intended to place one’s house at the center of this protection. More than two hundred years after the enactment of this amendment the policies underlying this amendment remain vital and fresh. Mr. Antone has a right to rely on this express, explicit,

and unambiguous articulation and the court has a duty to interpret this amendment bearing in mind its timeless purpose of protecting people in their "houses."

**IV. Conclusion**

For the foregoing reasons, all evidence obtained in support of the subject indictment was unlawfully gathered and must be suppressed.

Respectfully submitted,
Joseph Antone, Jr.
By his attorneys,

/s/ Joseph J. Voccola
Joseph J. Voccola, Esq. (Bar #4132)
Law Offices of Joseph J. Voccola
454 Broadway
Providence RI 02903
Phone (401) 751-3900
Fax (401) 751-8983
suejoevoccolalawoffices.com

/s/ John F. Lusi
John F. Lusi, Esq. (Bar. #4949)
Law Offices of John F. Lusi
29 Okie Street
Providence RI 02908
Phone (401) 632-0161
Fax (401) 632-0589
jlusi@cox.net

Certificate of Service

I hereby certify that true copies of the within motion were served by electronic mail to:

Sandra.beckner@usdoj.gov

usariecf@usdoj.gov

/s/ Joseph J. Voccola
Joseph J. Voccola, Esq. (Bar #4132)
Law Offices of Joseph J. Voccola
454 Broadway
Providence RI 02903
Phone (401) 751-3900
Fax (401) 751-8983
suejoevoccolalawoffices.com

/s/ John F. Lusi
John F. Lusi, Esq. (Bar. #4949)
Law Offices of John F. Lusi
29 Okie Street
Providence RI 02908
Phone (401) 632-0161
Fax (401) 632-0589
jlusi@cox.net